```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                     FORT WORTH DIVISION

UNITED STATES OF AMERICA        §
                                §
VS.                             §   CRIMINAL NO. 4:14-CR-146-Y
                                §
JEFFREY WATTS                   §
```

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Order to Show Cause (ECF No. 85) and defendant Jeffrey Watts's Response to the Court's Order to Show Cause (ECF No. 87). Having considered Defendant's Response, the arguments and evidence presented at the show cause hearing on September 30, 2020, and all papers on file with the Court, for the reasons set forth more fully below, the Court finds that Defendant's sentence of imprisonment for a term of four months followed by supervised release for a term of twenty-four months as stated in the Judgment in a Criminal Case for Revocation of Supervised Release (ECF No. 83) should be VACATED.

BACKGROUND

On September 22, 2020, a revocation hearing was held, at which time the Court determined that Defendant had violated his conditions of supervised release. (ECF No. 81.) Defendant was adjudged guilty of such violations and sentenced to imprisonment for a term of four months, under USSG § 7B1.4(a), p.s., upon release from which Defendant was sentenced to supervised release for a term of twenty-four months under the same conditions set out in the Judgement in a Criminal Case

on February 3, 2015, plus any additional conditions imposed thereafter. (ECF No. 83.)

During the revocation hearing, Defendant represented to the Court that he had a job opportunity with a childhood friend whom Defendant claimed to have known for 40 years, and who owns real estate, restaurants, and a real estate management and marketing company. (Transcript, pp. 9-13, ECF No. 86.) Specifically, Defendant alleged that he was "certain" that he had a job expanding his friend's fast-food Asian restaurants, Chop Chop Rice Co., in Amarillo and Fort Worth, Texas. (*Id*. at 12.) Defendant claimed that he discussed the job with his friend "routinely at least a couple of times a month" prior to his most recent period of incarceration. (*Id*. at 13.) Defendant claimed that, even during his period of incarceration, he had "spoken to [his] mom about it, and she ha[d] spoken with [the childhood friend]." (*Id*.) Defendant claimed he was originally supposed to begin work in October, but that due to COVID-19, his start date "very well might be pushed back." (*Id*.) Defendant represented that this job was a "career opportunity," that might allow him to meet his financial responsibilities. (*Id*.)

As a result of Defendant's alleged job opportunity, the Court reduced the sentence that it intended to impose at the outset of the hearing. The Court specifically stated on the record, "[t]he sentence I'm going to give you is almost entirely based on the representation that you have made about your job. . . . I'm going to tell you now . . . it's based on that job that I'm giving you the sentence I'm

about to give you, rather than a more serious sentence." (*Id*. at 14.)

On September 23, the day after the revocation hearing, the Court received information from the United States Probation Office indicating that Defendant's representations to the Court concerning his "career opportunity" were a complete fabrication. Accordingly, the Court held a show cause hearing on September 30, to inform the Court's suspicion that Defendant misrepresented information to the Court, that those misrepresentations were made knowingly and with the intent to deceive the Court, and that Defendant's misrepresentations constitute a fraud on the Court which resulted in clear error as to the sentence the Court imposed. (Order to Show Cause, p. 3.)

During the show cause hearing, the Court heard argument from counsel and considered evidence from the parties. Defendant invoked his Fifth Amendment right and refused to testify, but his counsel presented argument in line with his submitted brief. The government called U.S. Probation Officer Joe Hunnicutt to the stand for questioning. Mr. Hunnicutt testified that after the revocation hearing on September 22, he contacted U.S. Probation Officer Teresa Perez, who supervised Defendant since he began his term of supervised release on April 13, 2018. Mr. Hunnicutt further testified that he informed Ms. Perez of Defendant's sentence and asked her to submit a Petition for Offender Under Supervision if Defendant failed to follow through with the employment opportunity with Chop Chop Rice Co. that he relied upon during his revocation hearing. Mr. Hunnicut

testified that Ms. Perez informed him that Defendant's friend who owns Chop Chop Rice Co. is named David Smith, that Mr. Smith fired Defendant in 2018, and that Ms. Perez did not believe Defendant had an opportunity at Chop Chop Rice Co.  The day after the revocation hearing, Ms. Perez contacted Mr. Smith to inquire about Defendant's alleged career opportunity.  Ms. Perez learned from Mr. Smith that he had not extended an employment opportunity to Defendant, that Mr. Smith had not communicated with Defendant since he had terminated him in 2018, and that he would not ever offer him a position with his company.  The Court also admitted into evidence the transcript from the September 22 revocation hearing as well as Ms. Perez's affidavit outlining her investigation into Defendant's claims during the revocation hearing.  This matter is now fully briefed and ripe for review.

## ANALYSIS

"The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  18 U.S.C.A. § 3582(c)(1)(B).  Under Rule 35, "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35.  "Although Rule 35[] does not explicitly state so, a Rule 35[] correction may occur sua sponte. *United States v.*

*Delgado*, 256 F.3d 264, 279 (5th Cir. 2001)(citing Fed. R. Crim. P. 35 advisory comm. notes).

The Fifth Circuit has stopped short of imposing limits on the types of error that constitute "other clear error" under Rule 35(a). *See, e.g.*, *United States v. Lopez*, 26 F.3d 512, 523 (5th Cir. 1994) ("We do not in this opinion purport to address exhaustively the contours of the district court's authority to correct a sentence pursuant to Rule 35[].")*; United States v. Hankton*, 875 F.3d 786, 791 (5th Cir. 2017).  The Fifth Circuit tends to define Rule 35(a) "error" by what it is not, explaining "Rule 35(a) is not designed for the court to reconsider the application or interpretation of the Guidelines or to change its mind about the propriety of a sentence, and should not be used to reopen issues previously resolved at sentencing through the exercise of the court's discretion with regard to the application of the sentencing [G]uidelines." *United States v. Sanchez-Villarreal*, 857 F.3d 714, 718 (5th Cir. 2017)(quoting *United States v. Olarte-Rojas*, 820 F.3d 798, 804 (5th Cir. 2016))(quotations omitted). As a general matter, the Fifth Circuit has looked to the advisory committee's note to the 1991 amendment as a guide for interpreting Rule 35(a), which states that the rule's application extends to "cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action." *Olarte-Rojas*, 820 F.3d 803-4.

Importantly, this Court is unaware of any cases in which the Fifth Circuit has considered whether error resulting from fraud perpetrated on the court constitutes "other clear error" under Rule 35(a). The circuits that have considered the matter have found, to varying degrees, that Rule 35(a) does permit the court to amend an erroneous sentence resulting from fraud on the court. The Eighth Circuit found unequivocally that Rule 35 extends to error resulting from fraud on the court. *United States v. Fortino*, 281 F. App'x 629, 631 (8th Cir. 2008) ("If fraud on the court is not the kind of clear error contemplated by Rule 35, we cannot think of one that is."). The Seventh Circuit implicitly reached the same conclusion when it found that "the district court's inherent power to correct a judgment procured through fraud" allows a court to modify a sentence even after the time period set forth in Rule 35 has expired. *United States v. Bishop*, 774 F.2d 771, 774 (7th Cir. 1985).

The Third Circuit disagreed with the Seventh Circuit's conclusion that district courts have the inherent authority to correct a sentence procured through fraud after the time period set forth in Rule 35 has expired, reasoning "that § 3582(c) sets forth a statutory basis for limiting the district courts' jurisdiction and therefore th[e] Rule 35(a) [fourteen]–day limit is jurisdictional."[1] *United States v. Washington*, 549 F.3d 905, 916 (3d Cir. 2008) (quotations omitted).

---

[1] At the time *Washington* was decided, Rule 35(a) provided for a 7-day period to modify a sentence, which was expanded to fourteen days in 2009 to accommodate the "increased complexity of the sentencing process." Fed. R. Crim. P. 35, advisory committee's note to 2009 amendment.

*Washington* is silent, however, on the issue of whether fraud on the court can result in "other clear error" under Rule 35(a). Unlike in the present case, the district court in *Washington* did not learn of the defendant's fraud until more than two years had passed after the initial sentence, and the Court did not even purport to act under the authority of Rule 35, instead relying solely on its inherent authority to correct a sentence procured through fraud. *Id.* at 908-9.

In *United States v. Hall*, a case cited by Defendant, the Fourth Circuit declined to decide whether fraud on the court constitutes "clear error" under Rule 35(a) because the Court found that the defendant's actions in that case were "not the type of fraud that we have held in similar circumstances warrants setting aside a final judgment." 644 F. App'x 274, 276 (4th Cir. 2016). In *Hall*, the defendant submitted a letter to the court five days before his sentencing hearing that he claimed was from his court-ordered Alcoholics Anonymous sponsor, but was actually a forgery. *Id.* at 275-76. Largely in reliance on the letter, the district court "sentenced Hall to three years of probation, with a special condition of thirty days of intermittent confinement and three months of home detention with electronic monitoring," despite an "advisory U.S. Sentencing Guidelines range of fifteen to twenty-one months' imprisonment." *Id.* at 275. After discovering the forgery "within a week of sentencing," the district court vacated the sentence and held a resentencing hearing eleven days after the original sentencing hearing. At the resentencing hearing, the Court sentenced Hall to

twenty-one months' imprisonment. On appeal, the court relied on Fourth Circuit case law relating to Federal Rule of Civil Procedure 60(d)(3) to decide that even though the sentence was "marred by fraud," the forged letter was a type of "evil[] that can and should be exposed by an opposing party, [because] the legal system encourages and expects litigants to root [it] out as early as possible." *Id.* at 277 (quotations and citations omitted). The court further reasoned that "the government could reasonably have discovered Hall's forgery," and therefore the court considered the forged letter to be a "preventable fraud" which should not "override the finality of judgments." *Id.*

Crucially important to this Court's reading of *Hall* is the following limitation to its holding:

> We are keenly aware that Hall's action strikes at the heart of the district court's truth-finding function, and it may be that in a case in which the government could not have reasonably discovered the fraud, we would be compelled to reach a different conclusion. But this is not that case.

*Id.* The present case seems to present exactly the type of fraud the Fourth Circuit would have considered egregious and unpreventable. It is undisputed that Defendant sprung his lies about his alleged "career opportunity" on the government and the Court for the first time during his revocation hearing on September 22. Immediately after the revocation hearing, the U.S. Probation Office quickly debunked Defendant's lies with a few simple phone calls. Clearly, had the government received any indication that Defendant intended to claim

he had an employment opportunity at Chop Chop Rice Co. prior to his sentencing hearing, the government could have successfully investigated the claim and "rooted out" the fraud. Without any prior notice of Defendant's fraudulent claims, however, the government could not reasonably have discovered the fraud in time to prevent the Court from relying upon it and imposing a clearly erroneous sentence.

The other cases relied upon by Defendant are likewise unhelpful to his cause; neither *Hankton* nor *Lopez* address the question of whether fraud on the court may be considered "clear error" under 35(a). *Hankton* merely reiterates the uncontroversial position that the district court could not use Rule 35(a) "to reconsider the application or interpretation of the sentencing guidelines" where it was ultimately authorized to impose the sentence it initially gave the defendant. *Hankton*, 875 F.3d at 791. *Hankton* is clearly distinguishable from this case, as this Court is not basing its authority to modify Defendant's sentence under 35(a) because of changed interpretation of the sentencing guidelines, but because the sentence Defendant received was procured through an egregious act of fraud on the court.

The Court also distinguishes *Lopez* because that case does not address fraud on the court, and for the additional significant reason that the court in *Lopez* attempted to modify the defendant's sentence well outside the prescribed time limit under Rule 35. *Lopez*, 26 F.3d at 519 ("Perhaps the most obvious impediment to reliance upon Rule 35[] is its explicit time limit. Rule 35[] imposes a [fourteen]-day

period, which is jurisdictional."). In *Lopez*, the Defendant was initially granted a downward departure for substantial assistance but later refused to testify at his co-defendants' trials. Two months after the original sentence was imposed, the government moved to vacate the sentence and impose the punishment Lopez would have received in the absence of a downward departure for substantial assistance. Importantly, the district court did not consider Lopez's failure to testify at his co-defendants' trials to be "fraud on the court," neither party made that argument on appeal, and the Fifth Circuit did not address whether fraud on the court fits within the meaning of "clear error" under 35(a). The Court notes the distinction between breaking an agreement with the government, as was the case in *Lopez*, and defrauding the Court, as occurred in the present case. It is not necessary for this Court to determine whether the mistake of relying on Lopez's agreement to assist the government in the future could even be considered "fraud on the court"; it is sufficient to note that the factual distinctions between *Lopez* and the current case severely limit the application of that case to the present matter.

In summary, the Court finds that Defendant's lies constitute fraud on the court that resulted in "clear error" under Rule 35(a). The Court notes that, in similar contexts to the case at bar, courts routinely find that a defendant commits "fraud on the Court by withholding from the court at sentencing information [that] would have altered the court's sentencing decision." *See United States v. Camarata*, 828 F.2d 974, 977 n.5 (3d Cir. 1987)(collecting cases).

Defendant intentionally provided false information to the Court in connection with his sentencing. Defendant intentionally misrepresented that he had a job opportunity with the potential to facilitate his rehabilitation, and the Court not only considered that misinformation in connection with Defendant's sentencing, but heavily relied upon that misinformation to reduce the sentence that it would have otherwise imposed. As a result, the Court concludes that Defendant's sentence was clearly erroneous because it was based on fraudulent information submitted by Defendant at his sentencing hearing for the first time.

## CONCLUSION

Accordingly, the Court hereby VACATES the sentence of imprisonment for a term of four months followed by supervised release for a term of twenty-four months.

SIGNED October 5, 2020.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE